# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### (NASHVILLE DIVISION)

| | |
|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE,<br><br>             Plaintiff,<br><br>v.<br><br>SAIRA AZIZ DHANANI, ACE TAX SERVICE LLC, and AZIZ DHANANI<br><br>             Defendants. | ) <br> ) <br> ) <br> ) CIVIL ACTION NO. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty" or "Plaintiff"), by and through the undersigned counsel, for its Verified Complaint against Defendants Saira Aziz Dhanani ("Saira Dhanani"), Ace Tax Service LLC ("Ace Tax") and Aziz Dhanani ("Aziz Dhanani") (collectively, "Defendants"), states as follows:

## INTRODUCTION

1.      Saira Dhanani and Ace Tax are former Liberty franchisees who have violated the non-competition, non-solicitation, and post-termination covenants in their franchise agreements with Liberty after they were terminated as franchisees for breaching their franchise agreements with the assistance of Saira Dhanani's husband, Aziz Dhanani.

2.      Until recently, Saira Dhanani and Ace Tax (together, the "Franchisee Defendants") were franchisees of two Liberty franchise offices in Nashville, Tennessee pursuant to two separate franchise agreements with Liberty (collectively, the "Franchise Agreements").

3.      Liberty terminated the Franchise Agreements in December of 2023 after learning

Liberty v. Dhanani - DRAFT Verified Complaint - 8/22/2024 1:02 PM

Case 3:24-cv-01026    Document 1    Filed 08/22/24    Page 1 of 40 PageID #: 1

that Franchise Defendants were preparing and filing tax returns outside of Liberty's system, in violation of in-term non-competition obligations.

4. Since the termination of the Franchise Agreements, the Franchisee Defendants, in concert with Aziz Dhanani, have breached post-term non-compete and non-solicitation covenants in the Franchise Agreements by using Liberty's trade secrets to offer and provide tax preparation services from their former Liberty offices, in many cases for Liberty's customers.

5. Liberty seeks a preliminary and permanent injunction requiring Defendants to comply with the post-term covenants and obligations in the Franchise Agreements.

6. In this action, Liberty seeks an order, *inter alia*: (1) enjoining Defendants from directly or indirectly preparing or filing tax returns, or offering financial products, within 25 miles of their former Liberty franchise territories for two years; (2) enjoining Defendants from directly or indirectly soliciting any customers served by their former Liberty offices for two years; (3) enjoining Defendants from using Liberty's confidential information and trade secrets, including Liberty's client lists, files and records, in perpetuity; (4) requiring Defendants to immediately return any copies of Liberty's confidential information and trade secrets, including Liberty's Operations Manual and client lists, files and records, that are still in their possession; and (5) enjoining Defendants from continuing to use any of Liberty's trademarks.

## PARTIES

7. JTH Tax LLC d/b/a Liberty Tax Service is a Delaware limited liability company with its principal place of business at 2378 Liberty Way, Virginia Beach, Virginia 23456.

8. Upon information and belief, Saira Dhanani is a resident of Tennessee, with a last known address of 319 Hamlets End Way, Franklin, TN 37067.

9. Upon information and belief, Aziz Dhanani is a resident of Tennessee, with a last

known address of 319 Hamlets End Way, Franklin, TN 37067.

10.     Ace Tax is a Tennessee limited liability company with a principal address of 3405 Gallatin Pike, Nashville, TN 37216. Saira Dhanani is the registered agent and a member of Ace Tax.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Saira Dhanani and Aziz Khanani because they are is residents of Tennessee.

12.     This Court has personal jurisdiction over Ace Tax because it is a Tennessee entity with a principal place of business in Tennessee.

13.     This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1332 because there is complete diversity between Defendants and Liberty and the amount in controversy exceeds $75,000.

14.     Additionally, this Court has original subject matter jurisdiction over this case pursuant to the Lanham Act, 15 U.S.C. § 1125(a), as well as supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Lanham Act.

15.     Pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2), this action is properly venued in this District because all Defendants are citizens of Tennessee for jurisdictional purposes, and because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## FACTUAL BACKGROUND

**A.      Liberty's Franchise System**

16.     Liberty is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including Tennessee.

17.     Liberty owns the federally-registered Liberty Tax® and Liberty Tax Service® trademarks, service marks, logos and derivations thereof (the "Marks"), and has spent substantial time and money advertising and promoting the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks. Franchisees license the Marks pursuant to franchise agreements.

18.     The Marks have been in continuous use in commerce since at least the dates of first use identified in the respective registrations to the present.

19.     The LIBERTY TAX® mark was first used in commerce for tax preparation services as early as January 2000. Attached hereto as **Exhibit A** is a copy of the USPTO Registration Certificate, No. 2,465,670.

20.     The LIBERTY TAX SERVICE® mark was first used in commerce for tax preparation services as early as December 1997. Attached hereto as **Exhibit B** is a copy of the USPTO Registration Certificate, No. 2,314,991.

21.     The LIBERTY TAX SERVICE® mark in conjunction with the Statute of Liberty head was first used in commerce for tax preparation services as early as January 1999. Attached hereto as **Exhibit C** is a copy of the USPTO Registration Certificate, No. 2,479,692.

22.     The LIBERTY TAX® mark in conjunction with the Statute of Liberty flame was first used in commerce for tax preparation services as early as January 2020. Attached hereto as **Exhibit D** is a copy of the USPTO Registration Certificate, No. 6,229,388.

23.     Pursuant to the terms of its franchise agreements, Liberty discloses certain confidential information and trade secrets, including Liberty's confidential Operations Manual, methods of operation, customer information and records, and marketing information (collectively, "Confidential Information"), to franchisees.

4

24.     Liberty franchisees are contractually obligated, upon termination, expiration, or nonrenewal of a franchise agreement, to return, and desist from using or disclosing, any and all of Liberty's Confidential Information.

25.     Liberty has invested substantial time and money in maintaining and improving its franchise system, including, *inter alia*: (1) developing and maintaining service and product quality; (2) developing and maintaining uniform designs and markings for its services; (3) licensing trademarks and other proprietary information to franchisees; and (4) training franchisees.

26.     As a result of Liberty's investment in, and development of, its franchise system and Confidential Information, Liberty has grown to be one of the largest tax preparation franchises in the United States.

27.     Liberty's busiest time of year are the months of January through April, during which time Liberty generates approximately 90% of its annual revenue.

**B.     The Franchise Agreements**

28.     Beginning in 2016, the Franchisee Defendants executed a series of Franchise Agreements with Liberty pursuant to which they operated two Liberty offices in two franchise territories located in Nashville, Tennessee, known as TN014 and TN182.

**1.     Franchise Territory TN014**

29.     Franchise Agreements became Liberty franchisees in November 2016, when a their predecessor franchisee assigned their franchise agreement for the TN104 territory to Franchise Defendants.

30.     Effective June 22, 2021, the Franchisee Defendants renewed the TN104 Franchise Agreement ("TN104 Renewal"). A copy of the TN104 Renewal, which was the operative agreement between Liberty and Franchise Defendants for the TN104 territory through the

termination of Franchise Defendants' relationship with Liberty, is attached hereto as **Exhibit E**. Hereafter the TN104 Renewal is referred to as the "TN104 Franchise Agreement."

31.     Pursuant to the TN104 Franchise Agreement, The Franchisee Defendants operated a Liberty franchise office at 3405 Gallatin Pike, Nashville, TN (the "Gallatin Pike Location").

32.     There has been a Liberty franchise office at the Gallatin Pike Location since approximately 2014.

### 2.     Franchise Territory TN182

33.     Franchise Agreements became Liberty franchisees in November 2016, when a their predecessor franchisee assigned their franchise agreement for the TN182 territory to Franchise Defendants

34.     Effective June 22, 2021, the Franchisee Defendants renewed the TN182 Franchise Agreement ("TN182 Renewal"). A copy of the TN182 Renewal, which was the operative agreement between Liberty and Franchise Defendants for the TN182 territory through the termination of Franchise Defendants' relationship with Liberty, is attached hereto as **Exhibit F**. Hereafter, the TN182 Renewal is referred to as the "TN182 Franchise Agreement."

35.     The TN104 and TN182 Franchise Agreements are together referred to as the "Franchise Agreements." The terms and conditions of the Franchise Agreements are the same in all material respects.

36.     Pursuant to the TN182 Franchise Agreement, the Franchisee Defendants operated a Liberty franchise office at 3041 Dickerson Pike, Suite G, Nashville, TN ("Dickerson Pike Location").

37.     There has been a Liberty franchise office at the Dickerson Pike Location since approximately 2015.

### C.    Obligations Under the Franchise Agreements

38.    In exchange for Liberty's grant of franchises allowing Franchise Defendants to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory," the Franchisee Defendants agreed to certain in-term and post-termination obligations.

39.    Pursuant to the Franchise Agreements, Liberty provided the Franchisee Defendants with training in franchise operation, marketing, advertising, sales, and business systems. The Franchisee Defendants also received copies of Liberty's confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's business system. The Franchisee Defendants agreed to keep these materials confidential in perpetuity, including following the termination or expiration of the Franchise Agreements. *See* Exs. E-F §§ 5, 12.

40.    Pursuant to Section 4 of the Franchise Agreements, the Franchisee Defendants agreed to pay Liberty certain royalties and fees. *Id.* § 4.

41.    Section 9 of the Franchise Agreements sets forth certain of the Franchisee Defendants' post-term obligations, including (among others) the obligations to: (1) stop identifying as a Liberty franchise and forever cease use of the Liberty Marks and confusingly similar marks; (2) transfer to Liberty all phone numbers used in connection with their franchise business; (3) assign to Liberty (if Liberty elects) their interests in any leases for their franchise business; (4) deliver to Liberty, and stop using, all customer lists, tax returns, files, and records; (5) return Liberty's confidential Operations Manual; (6) forever refrain from using Liberty's Confidential Information; and (7) adhere to the Franchise Agreements' post-term non-competition and non-solicitation covenants. *Id.* §§ 9.

42.    Pursuant to Section 10(a) of the Franchise Agreements, the Franchisee Defendants

agreed that, during the term of the Franchise Agreements, they would "not to directly or indirectly… prepare or electronically file income tax returns, or offer Financial Products, except, if applicable, in your capacity as a . . . Liberty Tax franchisee." *Id.* §§ 10(a).

43. Pursuant to Section 10(b) of the Franchise Agreements, the Franchisee Defendants agreed that for two years following termination, they would refrain from "directly or indirectly, for a fee or charge, prepar[ing] or electronically fil[ing] income tax returns . . . within the Territory or within a twenty-five miles of the boundaries of the Territory." *Id.* §§ 10(b).

44. Pursuant to Section 10(d) of the Franchise Agreements, the Franchisee Defendants agreed to a two-year post-term covenant against soliciting "any person or entity served by any of [their] prior Liberty offices within the last twelve (12) months that [they were] a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products." *Id.* §§ 10(d).

45. Pursuant to Section 10(e) of the Franchise Agreements, the Franchisee Defendants agreed that they would assign their lease to their franchise locations to any competing tax preparation company during or after the termination of their franchise offices." *Id.* §§ 10(e).

46. The Franchisee Defendants also agreed to use good faith efforts to ensure that for 24 months following termination of the Franchise Agreements, no competing tax businesses would operate at their Liberty locations.

47. Pursuant to Section 10(f) of the Franchise Agreements, the Franchisee Defendants agreed "not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty…" *Id.* §§ 10(f).

48. The restrictive covenants contained in the Franchise Agreements are necessary to protect Liberty's legitimate, protectable interest in its franchise, including, but not limited to:

      a.     Maintaining and protecting Liberty's goodwill and customer loyalty;

b.      Retaining customer relationships;

c.      Liberty's customer lists, customer identification, tax returns, and other confidential information;

d.      Preserving Liberty's ability to facilitate the operation of Liberty franchises where Liberty franchise offices are currently located; and

e.      Protecting Liberty from irreparable harm.

49.     When a franchisee operates a competing tax business in violation of Section 10 of the Franchise Agreement, Liberty loses customer goodwill and loyalty because customers associate Liberty with the competing location and personnel. Additionally, it is significantly more difficult to find a replacement franchisee when the former franchisee operates a competing tax business in their former franchise territory in violation of Section 10 of the Franchise Agreement.

50.     Pursuant to Section 10(h) of the Franchise Agreements, the Franchisee Defendants agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." *Id.,* § 10(h). To that end, The Franchisee Defendants agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." *Id.* The Franchisee Defendants also expressly agreed to "waive any requirement that Liberty post a bond related to any temporary restraining order or injunctions requested as a result of an alleged violation of Sections 9 and 10." *Id*.

51.     Pursuant to Section 10(i) of the Franchise Agreements, the Franchisee Defendants agreed that "[t]he covenants contained in Section 10 shall survive any termination or expiration of this Agreement." *Id.* §§ 10(i).

52.     Pursuant to Section 12(a) of the Franchise Agreements, the Franchisee Defendants agreed "not to directly or indirectly communicate, divulge, or use any Confidential Information

for [their] personal benefit or the benefit of any other person." They further agreed that, upon termination of the Franchise Agreements, they would "never use or disclose . . . Liberty's Confidential Information in any manner whatsoever." *Id,* §§ 12(a).

53.     Pursuant to Section 12(c) of the Franchise Agreements, the Franchisee Defendants agreed to: "(i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information." *Id.* §§ 12(c).

54.     Section 16 of the Franchise Agreements grants Liberty a security interest "in all of the assets of your Franchised Business, including inventory, accounts, supplies, contracts, and proceeds and products of all those assets . . . If you default in any of your obligations under this Agreement, Liberty may exercise all rights of a secured creditor granted to Liberty by law, in addition to our other rights under this Agreement and at law." *Id*. §§ 16.

55.     Section 18 of the Franchise Agreements contains a mandatory Virginia choice of law provision.  *Id.* §§ 18(a).

56.     Pursuant to Section 27 of the Franchise Agreements, Saira Dhanani personally agreed to perform all the obligations under the Franchise Agreements, including all obligations related to the covenants not to compete, covenants not to solicit, and confidentiality obligations. Specifically, Saira Dhanani agreed that she would: "perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to

compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty . . ." *Id.* §§ 27.

**D.     In-Term breaches of the Franchise Agreements**

57.     All tax return filers are required to have an Electronic Filing Identification Number ("EFIN") issued by the Internal Revenue Service ("IRS") for each business they own and operate. An EFIN allows the IRS to monitor, track, and regulate who electronically files tax returns.

58.     The IRS publishes a publicly available database of all EFINs each tax year, which includes, *inter alia*, the legal name, fictitious name, address, phone number, application submission date, and return count.

59.     Three EFINs registered to Ace Tax Service LLC on the IRS database.

60.     IRS data shows that the first EFIN is registered to Ace Tax Service LLC d/b/a Liberty Tax Service and lists the Dickerson Pike Location as the business address.

61.     IRS data shows that the second EFIN is registered to Ace Tax Service LLC d/b/a Liberty Tax Service and lists the Gallatin Pike Location as the business address.

62.     IRS data shows that the third EFIN is registered to Ace Tax Service LLC d/b/a Ace Tax Service LLC and lists Saira and Aziz Dhanani's home address (319 Hamlets End Way, Franklin, TN) as the business address.

63.     IRS data shows that beginning in 2023, there was a significant and abrupt decrease in the number of returns filed by Ace Tax with the EFINs associated with the Dickerson Pike Location and Gallatin Pike Location, and a corresponding significant and abrupt increase in the number of returns filed by Ace Tax with the third EFIN associated with Saira and Aziz Dhanani's home address.

64.     The table below shows the number of returns filed with each of the three EFINs

from 2021 through 2023, according to IRS data:

| EFIN | Legal Name | D/B/A Name | Business Address | 2021 Returns | 2022 Returns | 2023 Returns |
|------|-----------|-----------|------------------|--------------|--------------|--------------|
| 1 | Ace Tax Service LLC | Liberty Tax Service | Dickerson Pike Location | 681 | 560 | 156 |
| 2 | Ace Tax Service LLC | Liberty Tax Service | Gallatin Pike Location | 338 | 404 | 150 |
| 3 | Ace Tax Service LLC | Ace Tax Service LLC | 319 Hamlets End Way | 0 | 0 | 315 |

65.     This IRS data strongly suggests that the Franchisee Defendants began filing tax returns outside of the Liberty system in 2023, in violation of the Franchise Agreements, in order to avoid paying royalties due to Liberty.

66.     Furthermore, the most recent IRS data, which was published at the end of June 2024, shows that Defendants have filed *510 tax returns* from their third EFIN so far in 2024.

**E.     Termination of the Franchise Agreements.**

67.     On or around November 3, 2023, Liberty sent the Franchisee Defendants a Notice to Cure Defaults, which stated that Liberty had determined that the Franchisee Defendants controlled an EFIN that was used to prepare and file income tax returns with the IRS outside of the Liberty Tax system in violation of the Franchise Agreements ("Notice to Cure"). A copy of the Notice to Cure is attached hereto as **Exhibit G**.

68.     The Franchisee Defendants failed to comply with the Notice to Cure Defaults or otherwise cure the defaults.  As such, on or around December 7, 2023, Liberty sent the Franchisee Defendants a letter terminating the Franchise Agreements ("Termination Notice").  A copy of the Termination Notice is attached hereto as **Exhibit H**.

69.     The Termination Letter reminded the Franchisee Defendants of their post-term obligations under their Franchise Agreements, including their obligations to:

<ol type="a">
<li>Refrain from any further use of Liberty's Marks;</li>

<li>Not identify as a current or former Liberty franchisees;</li>

<li>Pay to Liberty all monies owing;</li>

<li>Transfer all telephone numbers used in relation to their franchise business to Liberty;</li>

<li>Deliver to Liberty all paper and electronic copies of customer lists, tax returns, files, and records;</li>

<li>Deliver to Liberty the Operations Manual and all updates;</li>

<li>Upon Liberty's request, assign any interest in any lease, sublease or any other agreement related to their franchise business;</li>

<li>Upon Liberty's request, provide to Liberty any or all equipment, signs, trade fixtures and furnishings used in their franchise business;</li>

<li>Cease using and forever refrain from using and disclosing Liberty's Confidential Information and trade secrets; and</li>

<li>Adhere to the provisions of the post-termination covenants not to compete and not to solicit in the Franchise Agreements.</li>
</ol>

*Id.*

70. In Section 9(d) of the Franchise Agreements, the Franchisee Defendants agreed that, immediately upon the termination of the Franchise Agreements, they would pay to Liberty all amounts owing. Exs. E-F §§ 9(d).

71. As of the date of the termination of the Franchise Agreements, the Franchisee Defendants owed a total of $171,141.44 to Liberty.

72. Since the termination of the Franchise Agreements, the Franchisee Defendants have failed to pay any monies owed to Liberty.

**F.     Post-Term breaches of the Franchise Agreements.**

73. Following termination of the Franchise Agreements, the Franchisee Defendants

violated their post-termination obligations by continuing to operate Ace Tax, a competing tax business, from their former Liberty offices, using the telephone numbers associated with those offices.

74.     Franchisee Defendants operated Ace Tax using Liberty's Marks.

75.     On January 10, 2024, Liberty received a call from a customer named Katina Johnson, which notified Liberty that on January 9, 2024, she visited the Gallatin Pike Location to have her income taxes for the 2023 tax year prepared and filed. *See* Declaration of Kimberly Wheatley dated August 20, 2024 ("Wheatley Decl.") ¶¶ 8-9.

76.     Ms. Johnson expressed confusion about whether the Gallatin Pike Location was still a Liberty office. *Id.* ¶ 10.

77.     Ms. Johnson believed that the Gallatin Pike Location was still a Liberty location when she visited that offices to have her taxes prepared on January 9, 2024. *Id*. ¶ 11.

78.     Ms. Johnson provided Liberty with a copy the income tax return for the 2023 tax year that was prepared and filed by Ace Tax from the Gallatin Pike Location. *Id*. ¶ 12.

79.     The cover page of Ms. Johnson's income tax return (which she received from Ace Tax, operating at the time from the Gallatin Pike Location) displayed Liberty's Marks:



*Id*., ¶ 13.

80.     Ms. Johnson's income tax return also contained a cover letter, which was dated January 9, 2024 from Ace Tax and signed by Aziz Dhanani. *See id*., ¶ 14.

81.     The cover letter listed the Dhanani's home address as the address for Ace Tax:

01/09/2024

ACE TAX SERVICE LLC
319 HAMLETS END WAY
FRANKLIN, TN, 37067
Phone: (615) 739-3582

KATINA JOHNSON

Enclosed is your 2023 federal form 1040 income tax return.
Instructions for filing your 2023 federal form 1040.

• You have elected to file your Federal return ELECTRONICALLY.
• You must sign Form 8879 IRS e-file authorization.
• DO NOT MAIL A PAPER COPY OF YOUR RETURN TO THE IRS.

Your business is appreciated. Please call if you have any questions.

Sincerely,

AZIZ DHANANI

*Id.* ¶ 15

82.    Ms. Johnson's 2023 income tax return, which lists Saira and Aziz Dhanani's home address as the address for Ace Tax, was signed by Aziz Dhanani as the preparer:



*Id.* ¶¶ 16-17.

83.    Other Liberty customers who had their taxes prepared at the Franchise Defendants' former Liberty locations following the termination of the Franchise Agreements also expressed

confusion about whether Ace Tax was affiliated Liberty. *Id.* ¶ 18.

84.     On or around January 10, 2024, a Liberty representative drove to both the Gallatin Pike Location and the Dickerson Pike Location to observe the locations, and to request the return on Liberty's Confidential Information as required by the Franchise Agreements.

85.     The Liberty representative observed "Ace Tax Service" signage on the exterior of the Gallatin Pike Location.

86.     The Liberty representative observed that there was still Liberty signage on the exterior of the Dickerson Pike Location, despite the fact that Liberty had terminated the Franchise Agreements more than a month prior.

87.     The Liberty representative spoke with Saira Dhanani at the Dickerson Pike Location, and requested that she return Liberty's Confidential Information.

88.     Saira Dhanani refused to return Liberty's Confidential Information, asked the Liberty representative to leave, and locked the door behind him.

89.     On January 11, 2024, a Liberty representative exchanged emails with Aziz Dhanani, wherein Mr. Dhanani denied operating a tax business. Attached hereto as **Exhibit I** is a copy of the email correspondence.

90.     Aziz Dhanani's denial is demonstrably false for at least the following reasons:

- Just two days prior, on January 9, 2024, Aziz Dhanani prepared, signed and filed Katina Johnson's tax return on behalf of Ace Tax. *See* Wheatley Decl., ¶¶ 9-16.

- Just one day prior, on January 10, 2024, Saira Dhanani was at the Dickerson Pike Location, and refused to return Liberty's Confidential Information. *See* Section F.2 *supra*.

- Just one day prior, on January 10, 2024, the Dickerson Pike Location had exterior signage for Liberty Tax. *Id*.

- The IRS ERO database shows that Defendants' third EFIN—which is registered to Ace Tax Service LLC d/b/a Ace Tax Service LLC and lists Saira and Aziz

Dhanani's home address as the business address—has filed 510 tax returns so far in 2024.

91.     Moreover, a May 7, 2024, Limited Liability Company Annual Report for Ace Tax executed by Saira Dhanani lists: (a) the Dhanani's home address as Ace Tax's mailing address; (b) the Gallatin Pike Location as Ace Tax's principal office address; and (c) Saira Dhanani as the registered agent of Ace Tax.

92.     On February 6, 2024—two months following termination of the Franchise Agreements—Aziz Dhanani executed a contract with a tax preparation client on behalf of Ace Tax ( "February 6, 2024 Contract"), describing himself as a "tax preparer." A copy of this contract is attached hereto as **Exhibit J**.

93.     The first sentence of the February 6, 2024 Contract states that it is an agreement between an individual client and "AZIZ DHANANI Ace Tax Service – Office 19892 3041 Dickerson Pike Nashville TN 37207." *Id*. p. 1.

94.     The February 6, 2024 Contract states that notice must be provided to Aziz Dhanani at the Dickerson Pike Location, as follows:

> Mr. Aziz Dhanani
> 3041 Dickerson Pike – Office 19892
> Nashville, Tennessee 37207  dhanani.aziz@gmail.com

95.     "Office 19892" is the office number assigned to the Dickerson Pike Location by Liberty when it was a Liberty office.

96.     In February 2024, Liberty retained a private investigator to investigate the Dickerson Pike Location.

97.     The investigator confirmed that the Dickerson Pike Location displayed signage for "ACE TAX" and advertising "Income Tax" services at the time:



*See* Declaration of Thomas Jacobs dated August 13, 2024 ("Jacobs Decl.") ¶ 14, Ex. A.

98.     At the Dickerson Pike Location, the investigator spoke with an employee named "Mike, who stated that the Dickerson Pike Location has been open for a number of years and it just recently changed names. *Id*. ¶¶ 17.

99.     "Mike" confirmed that the customers waiting in the Dickerson Pike Location were all "repeat customers." *Id.* ¶ 18.

100.     One customer who was present stated that she has been coming to the Dickerson Pike Location for seven years. *Id*. ¶ 19.

101.     "Mike" confirmed the email address (acetaxnashville@gmail.com) and telephone number (615-928-8008) for the Dickerson Pike Location.  *Id*. ¶ 20, Ex. A.

102.     The telephone number (615-928-8008) is the telephone number that the Franchisee Defendants used for the Dickerson Pike Location when it was a Liberty office.

103.     The private investigator also investigated the Gallatin Pike Location. *Id.* ¶ 21.

104.     At the Gallatin Pike Location, the Liberty signage on the exterior of the location had been removed and replaced with signage for "ACE TAX SERVICE":



*Id.*, ¶ 22, Ex. B.

105.    At the Gallatin Pike Location, there was interior signage for "ACE TAX SERVICE." *Id.* ¶ 23.

106.    The interior of the Gallatin Pike Location was decorated with a patriotic theme, including stars and stripes, and a red, white and blue color scheme, which is the same color scheme and themes used in all Liberty franchise locations:



*Id.*, ¶ 24.

107.    The telephone number for Ace Tax operating at the former Gallatin Pike Location (615-227-2897) is the telephone number that the Franchisee Defendants used for the Gallatin Pike Location when it was a Liberty office. *Id.* ¶ 25.

108.    When the investigator called that number, a female employee of Ace Tax stated that the Gallatin Pike Location was open and that she would meet him at the location. *Id.* ¶ 26.

109.    When that person failed to show up at the Gallatin Pike Location, the investigator called back, and was then told by the female employee that Gallatin Pike Location is permanently closed, and Ace Tax is now running out of the Dickerson Pike Location. *Id.* ¶ 27.

110.    The foregoing unlawful competition has irreparably harmed, and will continue to irreparably harm Liberty and its current and future franchisees, and can only be stopped through injunctive relief.

111.    As detailed above, Defendants are unlawfully competing by operating a competing tax business: (a) at the same locations as their former Liberty offices; (b) using the same telephone numbers as their former Liberty offices; and (c) soliciting the same customers as their former Liberty offices.

112.    In essence, Defendants have simply changed the name under which they operate and have continued operating the same exact tax business without interruption in direct violation of the Franchise Agreements.

113.    Moreover, by and through their training and experience as Liberty franchisees, Defendants are now competing with knowledge of Liberty's marketing plans, the costs of operating a Liberty franchise, and the business strategies employed by Liberty franchisees. Defendants know exactly how Liberty's business system operates in terms of training, procedures,

promotion, marketing, products, pricing, technology, and every other critical aspect of its business that gives Liberty franchisees an edge in the marketplace.

114.     Before the Franchisee Defendants acquired their franchise territories, Liberty invested significant time, money and resources into developing customer goodwill and loyalty, building a customer base, and creating a stable franchise system in the Nashville, Tennessee area.

115.     Defendants' unlawful competition has irreparably harmed, and continues to irreparably harm, Liberty through loss of customer goodwill and loyalty; loss of business opportunities and relationships to provide tax preparation services and related services; loss of customers; loss of franchisee stability; loss of ability to sell other franchises; and loss of competitive advantage in the TN014 and TN182 franchise territories (and throughout the Nashville, Tennessee area). None of this irreparable harm can be quantified or compensated for through monetary damages.

116.     Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States and in the Nashville, Tennessee area, when a Liberty franchise location remains in a franchise territory for a number of years (and particularly when it remains at the same address), Liberty develops goodwill and loyalty with customers in the area. Prospective Liberty franchisees will often seek franchise territories with locations that have remained in a franchise territory for a number of years (and particularly when they remain at the same addresses) in order to capitalize on this goodwill and loyalty. For this reason, Liberty franchisees specifically acknowledge in the Franchise Agreement that Liberty loses customer goodwill when they breach the covenants not to compete.

117.     When the Franchisee Defendants executed the Franchise Agreements, the TN014 and TN182 territories had been operating as Liberty franchises for some time and had developed

a considerable amount of goodwill. The Franchisee Defendants capitalized on this goodwill and loyalty when they operated their Liberty offices. Defendants are now depriving Liberty of this goodwill and loyalty by operating a competing business at their former Liberty franchise locations.

118.     Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States, Liberty customers are much more likely to return to a tax office in the same territory and at the same address that they previously visited. For this reason, Liberty's Franchise Agreements give Liberty the right to require that a franchisee assign any lease(s) for their Liberty franchise business upon the termination of their Franchise Agreements and, when possible, Liberty encourages new Liberty franchisees to continue operating at an existing Liberty location if one exists in their franchise territory. When a competing tax business operates at a Liberty franchise location, there is a significant threat of a permanent loss of customers at that location and in the franchise territory. Once a Liberty customer is lost to a competitor, it is very difficult to win back the customer.

119.     Because Defendants are operating their competing tax business in their former Liberty territories and at their former Liberty locations, it very likely that they will provide tax services to Liberty customers returning to those locations—and in fact, there is evidence that Defendants have already done so. If their unlawful operation of a competing tax business at their former Liberty locations is allowed to continue, it will undoubtedly result in permanent loss of customers for Liberty.

120.     Based upon Liberty's operation of tax preparation offices and franchise locations throughout the United States and in the Nashville, Tennessee area, when a former Liberty franchisee unlawfully operates a competing tax business in their former franchise territory following termination of their Franchise Agreement, it reduces the value of the franchise territory

and makes it significantly more difficult for Liberty to attract a replacement franchisee for the franchise territory. If Liberty cannot find a replacement franchisee, it typically loses most of its customers in the franchise territory. Even when Liberty can find a replacement franchisee for the territory, Liberty still typically suffers a significant loss of customers because Liberty loses its competitive advantage in the territory.

121.     Because Defendants are operating their competing tax business at their former Liberty franchise locations, it is significantly more difficult for Liberty to attract permanent replacement franchisees for the TN014 and TN182 franchise territories. If Liberty cannot find permanent replacement franchisees, it will likely lose most of its customers in the TN014 and TN182 territories. Even if Liberty can find permanent replacement franchisees, Liberty will likely suffer a significant loss of customers because Liberty will lose its competitive advantage in the TN014 and TN182 territories.

122.     Liberty franchisees, including those in the Nashville, Tennessee area, communicate with each other and/or monitor the actions of other current and former Liberty franchisees. If Liberty franchisees observe that other franchisees are able to "flip signs" and operate competing tax business within their franchise territories, it can create a "domino effect" and cause other franchisees to also "flip signs" and begin competing.

123.     If Defendants' unlawful operation of a competing tax business at their former Liberty franchise locations is allowed to continue, it will likely create a "domino effect" and cause other current and former Liberty franchisees in the Nashville, Tennessee area to "flip signs" and begin operating competing tax businesses within their franchise territories, which will significantly reduce the value of a Liberty franchise in the Nashville, Tennessee area, and threaten the stability of Liberty's entire franchise system in the Nashville, Tennessee area.

124. It is vitally important to Liberty's franchise system and Liberty's franchisees that the Court enforce the post-term restrictive covenants and obligations in the Franchise Agreements, which expressly prohibit Defendants from operating their competing tax business.

125. Liberty has no means of enforcing the post-term restrictive covenants and obligations in the Franchise Agreements—and remedying the irreparable harm that Liberty has suffered, and continues to suffer—other than to seek injunctive relief from this Court.

126. Defendants have sources of income other than their tax business.

127. Aziz and Saira Dhanani own commercial real estate and, upon information and belief, Aziz Dhanani is a software developer.

<u>**COUNT I**</u>
***Breach of Contract against Saira Dhanani and Ace Tax***
***(Equitable Claim)***

128. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

129. The Franchise Agreements are valid and enforceable contracts.

130. Liberty has performed every obligation and condition required under the Franchise Agreements.

131. Pursuant to Section 10(a) of the Franchise Agreements, the Franchisee Defendants agreed to an in-term covenant not to compete.

132. The Franchisee Defendants materially breached Section 10(a) of the Franchise Agreements by filing taxes outside of Liberty's system during the terms of the Franchisee Agreements.

133. Liberty terminated the Franchise Agreements on December 7, 2023.

134. Pursuant to the Franchise Agreements, the Franchisee Defendants agreed to be bound by certain post-term covenants and obligations.

135.     Pursuant to Sections 10(b) and 10(d) of the Franchise Agreements, the Franchisee Defendants agreed to post-term covenants not to compete and not to solicit.

136.     Pursuant to Section 10(e) of the Franchise Agreements, the Franchisee Defendants agreed to use good faith efforts to ensure that after termination of the Franchise Agreements, no person or entity would offer income tax preparation at their former Liberty franchise locations.

137.     The Franchisee Defendants have materially breached, and continue to materially breach, Sections 10(b), 10(d) and 10(e) of the Franchise Agreements by operating a competing tax business at their former Liberty franchise locations.

138.     Pursuant to Section 9 of the Franchise Agreements, the Franchisee Defendants agreed to post-termination obligations, including (among others) the obligations to: (1) transfer to Liberty all phone numbers used in connection with the operation of their former Liberty franchise locations; (2) assign to Liberty (if Liberty elects) their interests in any leases for their former Liberty franchise locations; (3) deliver to Liberty all customer lists, tax returns, files, and records; (4) return Liberty's confidential Operations Manual; (5) forever refrain from using Liberty's Confidential Information; and (6) adhere to the Franchise Agreements' post-termination non-competition and non-solicitation covenants.

139.     The Franchisee Defendants have materially breached Section 9 of the Franchise Agreements by, among other breaches: (1) identifying as a Liberty franchise, holding themselves out as a former Liberty franchises and using Liberty Marks; (2) failing to transfer to Liberty all phone numbers used in connection with the operation of their former Liberty franchise locations; (3) failing to assign to Liberty their interests in any leases for their former Liberty franchise locations; and (4) failing to adhere to the Franchise Agreements' post-termination non-competition

and non-solicitation covenants by operating a competing tax business at their former Liberty franchise locations.

140.    As a direct and proximate result of these material breaches, Liberty has incurred and will continue to incur substantial losses, fees, and expense for which the Franchisee Defendants are liable.

141.    As a result of the Franchisee Defendants' past, present, and potential breaches, Liberty has suffered, and will continue to suffer, actual, substantial, and irreparable damages, including but not limited to:

      a.      Loss of customer goodwill and loyalty;

      b.      Loss of business opportunities and relationships to provide tax preparation services and related services;

      c.      Loss of customers;

      d.      Loss of franchisee stability;

      e.      Loss of ability to sell other franchises;

      f.      Loss of value in confidential business information; and

      g.      Loss of competitive advantage in each of the Franchise Territories.

142.    Liberty has been and will be irreparably harmed by the Franchisee Defendants' actions, and monetary damages are an insufficient remedy in that it can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Liberty's goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by the Franchisee Defendants' ongoing violations of the Franchise Agreements.

143.    The Franchisee Defendants expressly acknowledged in Section 10(c) of the Franchise Agreements that "any breach of the covenants not to compete causes damage to the

integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm."

144.    Pursuant to Section 27 of the Franchise Agreements, Saira Dhanani agreed to "perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty."

145.    Saira Dhanani also participated in the breaches of the Franchise Agreements by, among other things, operating a competing tax business, and misappropriating Liberty's goodwill, and is personally liable for all of Ace Taxes' breaches of the Franchise Agreements.

146.    Unless their wrongful conduct is enjoined, the Franchisee Defendants will continue to breach the non-competition and non-solicitation covenants.

### COUNT II
### *Breach of Contract against Saira Dhanani and Ace Tax*
### (*Monetary Claim*)

147.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

148.    The Franchise Agreements are valid and enforceable contracts.

149.    Liberty has performed every obligation and condition required under the Franchise Agreements.

150.    Pursuant to Section 9(d) of the Franchise Agreements, the Franchisee Defendants agreed that, immediately upon termination of the Franchise Agreements, they would pay to Liberty all amounts owing to Liberty.

151.    As of the termination date, the Franchisee Defendants owed a total of $171,141.44 in accounts receivable.

152.    The Franchisee Defendants have failed to pay any monies owed to Liberty since the termination of the Franchise Agreements.

153.    Liberty is entitled to exercise its rights under Section 16 of the Franchise Agreements, pursuant to which Defendants granted Liberty "a security interest in all of the assets of your Franchised Business, including inventory, accounts, supplies, contracts, and proceeds and products of all those assets."

154.    Additionally, as detailed above, pursuant to Section 10 of the Franchise Agreements, the Franchisee Defendants agreed to the in-term and post-term non-competition and non-solicitation covenants.

155.    The Franchisee Defendants have been, and currently are, competing against Liberty and soliciting customers in violation of the non-compete and non-solicit covenants in the Franchise Agreements by operating a competing tax business at their former Liberty franchise locations.

156.    The Franchisee Defendants have, and will continue, to compete against Liberty and solicit Liberty's customers in violation of the Franchise Agreements.

157.    Each of the Franchisee Defendants' foregoing breaches constitutes a material breach of the Franchise Agreements.

158.    As a direct and proximate result of the Franchisee Defendants' breaches of Sections 9 and 10 of the Franchise Agreements, Liberty has suffered and will continue to suffer damages in an amount to be proven at trial, for which the Franchisee Defendants are liable, including but not limited to, compensatory damages, consequential damages, and disgorgement of profits in an amount exceeding $75,000.

159.    Pursuant to Section 27 of the Franchise Agreements, Saira Dhanani agreed to "perform all the obligations in and relating to this Agreement, including, but not limited to, all

obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty."

160.    Because Saira Dhanani also participated individually in the breaches of the Franchise Agreements by, among other things, operating a competing tax business, and misappropriating Liberty's goodwill, Saira Dhanani is personally liable for all of the Franchisee Defendants' breaches of the Franchise Agreements.

**<u>COUNT III</u>**
***Federal Trademark Infringement (15 U.S.C. § 1114(1)) against all Defendants***

161.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

162.    Liberty owns certain Marks, including LIBERTY TAX®, LIBERTY TAX SERVICE®, LIBERTY TAX SERVICE® in conjunction with the Statute of Liberty head, and LIBERTY TAX® in conjunction with the Statute of Liberty flame.

163.    Liberty registered these distinctive Marks with the United States Patent and Trademark Office.

164.    Liberty has continuously used all of these Marks in commerce for tax preparation for years.

165.    Franchise Agreements allowed Defendants to operate a tax return preparation business using Liberty's system and Liberty's Marks within the TN014 and TN182 territories during the term of the Franchise Agreements.

166.    Pursuant to Section 9 of the Franchise Agreements, Defendants agreed that immediately upon termination they would "[s]top identifying [themselves] as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and forever cease the use of any of the Marks or any other marks that may be confused with the Marks; and [s]top using all literature

and forms received from Liberty and other items bearing the Marks."

167.    Liberty terminated the Franchise Agreements on December 7, 2023.

168.    For more than a month following the termination—including during the start of tax season—Defendants continued to use Liberty's Marks in the operation of their competing tax business.

169.    By way of example, as detailed above, Defendants continued to use Liberty signage on the exterior of the Dickerson Pike Location in January 2024.

170.    Also by way of example, as detailed above, Defendants continued to use Liberty-branded forms and documents when preparing tax returns (for former Liberty customers) at the Dickerson Pike Location in January 2024.

171.    Defendants' use of Liberty's Marks, particularly in conjunction with competing tax preparation services, has created a likelihood of confusion amongst customers.

172.    Liberty did not consent to Defendants' use of its Marks for the sale, offer of sale, or advertising of Defendants' services through their competing tax business, and the foregoing use was designed to cause confusion, cause mistake, and to deceive the public.

173.    Defendants have infringed on Liberty's Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

174.    Through their unlawful use and display of Liberty's Marks, Defendants have profited and Liberty has been damaged.

175.    The foregoing acts were done knowingly and intentionally to cause confusion, cause mistake, and/or to deceive customers, and to profit therefrom.

176.    As a direct and proximate result of Defendants' unlawful conduct, Liberty has incurred monetary damages, and has suffered irreparable harm to its goodwill and reputation, as

well as to the integrity and value of its Marks.

## COUNT IV
### *False Designation and Misrepresentation of Origin (15 U.S.C. § 1125(a)) against all Defendants*

177.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

178.    Defendants used Liberty's Marks and confusingly similar marks to identify the services provided from Defendants as those of Liberty or an authorized Liberty affiliate.

179.    Defendants' use of Liberty's Marks is likely to cause confusion, cause mistake, and/or deceive as to Defendants' affiliation, connection, or association with Liberty, or as to the origin, sponsorship, or approval of Defendants' services or commercial activities.

180.    The foregoing unlawful conduct described herein constitutes false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

181.    As a direct and proximate result of the foregoing wrongful conduct, Liberty has suffered damages to the value of its Marks and to customer goodwill.

182.    Defendants' acts were done knowingly and intentionally to cause confusion, to cause mistake, and/or to deceive customers, and to profit therefrom.

183.    As a direct and proximate result of Defendants' unlawful conduct, Liberty has incurred monetary damages, and has suffered irreparable harm to its goodwill and reputation, as well as to the integrity and value of its Marks.

## COUNT V
### *Trademark Dilution (15 U.S.C. § 1125(c)) against all Defendants*

184.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

185.    Liberty owns incontestable trademark registrations for its Marks.

186.    Liberty's Marks are famous and distinctive, and are widely recognized by the general consuming public as a designation of tax services for Liberty.

187.    For decades, Liberty has exclusively and continuously promoted and used its Marks throughout the United States to identify its tax preparation services.

188.    Defendants used the Marks in connection with the services of Ace Tax after the Marks became famous and distinctive.

189.    Defendants made use in commerce of marks that dilute or are likely to dilute the distinctiveness of the Marks by eroding the public's exclusive identification of the Marks with Liberty, tarnishing and degrading the positive association and prestigious connotations of the Marks, and otherwise lessening the capacity of the Marks to identify and distinguish Liberty's services.

190.    As a direct and proximate result of Defendants' unlawful conduct, Liberty has suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

191.    Defendants' actions demonstrate an intentional and willful intent to trade on the goodwill associated with Liberty's Marks or to cause dilution of the Marks to the great and irreparable injury to Liberty.

192.    Because Defendants have caused irreparable injury to Liberty's goodwill and business reputations and dilution of the distinctiveness and value of its Marks in violation of 15 U.S.C. § 1125(c), and because this is an exceptional case, Liberty is entitled to Defendants' profits, actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116 and 1117.

## COUNT VI
### *Tortious Interference with the Franchise Agreements against Aziz Dhanani*

193.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

194.    The Franchise Agreements are valid and enforceable contracts with Liberty.

195.    Liberty has legal rights under the Franchise Agreements as detailed above.

196.    Aziz Dhanani has knowledge of the Franchise Agreements (and the business relationship between Liberty and the Franchisee Defendants) as Saira Dhanani's husband and as a tax preparer for Ace Tax.

197.    Aziz Dhanani is not a party (i.e., a stranger) to the Franchise Agreements between Liberty and the Franchisee Defendants.

198.    Aziz Dhanani has no direct ownership interest in the Franchisee Defendants' former Liberty franchise business, and he has no direct beneficial, financial or economic interest in, or control, over the contractual relationship between Liberty and the Franchisee Defendants.

199.    Aziz Dhanani directly interfered with the Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert with the Franchisee Defendants to breach their Franchise Agreements by opening and operating a competing tax business at the Franchisee Defendants' former Liberty franchise locations in direct violation of the non-compete covenants in the Franchise Agreements.

200.    Aziz Dhanani directly interfered with the Franchise Agreements by inducing, causing, aiding and abetting, conspiring with, and/or acting in concert with the Franchisee Defendants to solicit Liberty customers for their competing tax business in direct violation of the non-solicitation covenant in the Franchise Agreements.

201.    Aziz Dhanani is preparing taxes for former Liberty customers on behalf of Ace Tax. *See* Wheatley Decl., ¶¶ 16-18.

202.    Aziz Dhanani's tortious interference with the Franchise Agreements was intentional, unjustified and without legal basis.

203.    Aziz Dhanani acted purposely, with malice, and with the intent to injure Liberty.

204.    Aziz Dhanani was not acting within the course and scope of his employment for,

or as an agent agents of, of the Franchisee Defendants when he tortiously interfered with the Franchise Agreements.

205.     Aziz Dhanani's tortious interference with the Franchise Agreements directly and proximately caused damage to Liberty by, *inter alia*, depriving Liberty of royalties and fees under their Franchise Agreements for tax returns filed through their competing tax business in violation of their Franchise Agreements.

206.     Aziz Dhanani's tortious interference with the Franchise Agreements directly and proximately caused Liberty to suffer, and will continue to cause Liberty to suffer, actual, substantial, and irreparable damages, including but not limited to:

      a.      Loss of customer goodwill and loyalty;

      b.      Loss of business opportunities and relationships to provide tax preparation services and related services;

      c.      Loss of customers;

      d.      Loss of franchisee stability;

      e.      Loss of ability to sell other franchises;

      f.      Loss of value in confidential business information; and

      g.      Loss of competitive advantage in each of the Franchise Territories.

## COUNT VII
### *Conspiracy to Tortiously Interfere*
### *Against All Defendants*

207.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

208.     The Franchise Agreements are valid and enforceable contracts between Liberty and the Franchisee Defendants.

209.     Liberty has legal rights under the Franchise Agreements as detailed above.

210.     Aziz Dhanani is not a party (i.e., is a stranger) to the Franchise Agreements.

211. Aziz Dhanani has no direct ownership interest in the Franchisee Defendants' former Liberty franchise business, and he has no direct beneficial, financial or economic interest in, or control, over the contractual relationship between Liberty and the Franchisee Defendants.

212. Defendants agreed and conspired to unlawfully breach the Franchise Agreements by taking unlawful, overt and concrete actions in furtherance of the conspiracy beyond simple preparation, including the following acts:

   a. Defendants have opened and operated a competing tax business at the Franchisee Defendants' former Liberty franchise offices in direct violation of the non-compete covenants in the Franchise Agreements, and Defendants are each involved in this competing tax business including as follows:

      i. The Franchisee Defendants' former Liberty offices are now operating as Ace Tax offices.

      ii. Ace Tax is serving former Liberty customers at the Franchisee Defendants' former Liberty offices.

      iii. Saira Dhanani a member and the registered agent of Ace Tax.

      iv. Aziz Dhanani is a tax preparer for Ace Tax who is preparing taxes for former Liberty customers on behalf of Ace Tax at the Franchisee Defendants' former Liberty offices. Despite Aziz Dhanani's claims in January 2024 that the tax business was sold and that Defendants are no longer in the tax industry, in February 2024, he executed a contract with a tax customer on behalf of Ace Tax at the Dickerson Pike Location.

   b. Defendants solicited Liberty customers for their competing tax business in direct violation of the Franchise Agreements.

213. Through these concerted actions Defendants conspired for their own benefit, and willfully and maliciously undertook to injure Liberty.

214. Defendants knew and intended that by conspiring together to breach the Franchise Agreements by opening and operating a competing tax business at the same locations as their former Liberty franchise locations, they would give themselves a competitive advantage over

Liberty.

215.     Defendants' conspiracy to tortiously interfere with the Franchise Agreements directly and proximately caused damage to Liberty by, *inter alia*, depriving Liberty of royalties and fees under the Franchise Agreements for tax returns filed through their competing tax business in violation of the Franchise Agreements.

216.     Defendants' conspiracy to tortiously interfere with the Franchise Agreements directly and proximately caused Liberty to suffer, and will continue to cause Liberty to suffer, actual, substantial, and irreparable damages, including but not limited to:

      a.      Loss of customer goodwill and loyalty;

      b.      Loss of business opportunities and relationships to provide tax preparation services and related services;

      c.      Loss of customers;

      d.      Loss of franchisee stability;

      e.      Loss of ability to sell other franchises;

      f.      Loss of value in confidential business information; and

      g.      Loss of competitive advantage in each of the Franchise Territories;

## PRAYER FOR RELIEF

WHEREFORE, Liberty prays for judgment against Defendants as follows:

1.     For the following preliminary and permanent injunctive relief:

      A.      Enjoin Saira Dhanani and Ace Tax, and all those acting by, through or in concert with them (including Aziz Dhanani), from directly or indirectly, for a fee or charge, preparing or electronically filing income tax returns, or offering Financial Products (as defined in the Franchise Agreements), within twenty-five (25) miles of the boundaries of the TN014 and TN182 franchise territories, for two years following the entry of any injunction;

      B.      Enjoin Saira Dhanani and Ace Tax, and all those acting by, through or in concert with them (including Aziz Dhanani), from directly or indirectly

soliciting any person or entity served by any of their prior Liberty offices within the last twelve (12) months that they were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products (as defined in the Franchise Agreements) for two years following the entry of any injunction;

C.      Enjoin Defendants from using or disclosing any of Liberty's Confidential Information, including without limitation, methods of operations, customer information, and marketing information;

D.      Enjoin Defendants from using Liberty's Marks in perpetuity;

E.      Order Defendants to deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of their former Liberty franchise business;

F.      Order Defendants to deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records;

G.      Order Defendants to deliver to Liberty all copies of the confidential Operations Manual and any updates thereto;

H.      Order Saira Dhanani and Ace Tax to transfer to Liberty all telephone numbers, listings and advertisements used in relation to their former Liberty franchise business; and

I.      Order Saira Dhanani and Ace Tax to assign to Liberty the lease for the Dickerson Pike Location;

2.      For an accounting of Defendants' revenues and profits for all tax return preparation and electronic filing since January 1, 2022;

3.      For a monetary award against Defendants in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, exemplary damages, and disgorgement of profits;

4.      For a monetary award against Defendants for Liberty's attorneys' fees and costs, in an amount to be proven at trial;

37

5.      For pre- and post-judgment interest; and

6.      For such other relief as the Court deems just and proper.

Dated: August 22, 2024

/s/ Joshua D. Wilson
Joshua D. Wilson (TN Bar # 031486)
GORDON REES SCULLY MANSUKHANI, LLP
4031 Aspen Grove Drive, Suite 290
Franklin, TN 37067
E: jdwilson@grsm.com
T: (615) 772-9007
F: (615) 970-7490

Of Counsel:
Peter G. Siachos, Esq.
*Pro Hac Vice Motion forthcoming*
GORDON REES SCULLY MANSUKHANI, LLP
677 King Street, Suite 450
Charleston, SC 29403
T: (973) 549-2532

Docusign Envelope ID: 97EF91E1-9412-41AA-814E-238D4CDC4C04

## **VERIFICATION**

CLIFFORD BIRNBAUM does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty").  I have read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct.  The grounds of my knowledge, information and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 20, 2024.

Clifford Birnbaum
Regional Director for JTH Tax LLC
d/b/a Liberty Tax Service